UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MONICA L. ENGLEHART,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 15-CV-138-JED-PJC |
| ) | |
| **BOARD OF REGENTS FOR THE** ) | |
| **OKLAHOMA AGRICULTURAL AND** ) | |
| **MECHANICAL COLLEGES** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

This matter comes before the Court on two motions filed by the parties: plaintiff Monica L. Englehart's ("plaintiff" or "Englehart") Motion and Opening Brief Seeking a Temporary Restraining Order ("plaintiff's Motion for TRO") (Doc. 17), and defendant's Brief in Support of Motion for Summary Judgment ("defendant's Motion for Summary Judgment") (Doc. 33). Both motions are opposed. (Docs. 21, 35).

**I.    Background**

Plaintiff filed this lawsuit pursuant to 42 U.S.C. section 1983 alleging that defendant violated her liberty interests and deprived her of her rights to due process and equal protection under the Fourteenth Amendment by dismissing her from the nursing program at the Langston University School of Nursing and Health Professions ("Langston University")[1] after the Fall 2014 semester.

Plaintiff was accepted into Langston University's nursing program for the Fall 2013 semester. (Doc. 17, Ex. 1, ¶ 5; Doc. 33, ¶ 8). She was on the Dean's Honor Roll for both the

---

[1] Defendant supervises, manages, and controls five academic institutions, including Langston University.

Fall 2013 and Spring 2014 semesters. (Doc. 17, Ex. 1, ¶ 6). During the Fall 2014 semester, plaintiff was enrolled in three courses, including the course that was her downfall—Nursing Care of the Childrearing Family (the "Course"). (Doc. 21 at 2; Doc. 33, ¶ 9).

The Course syllabus contains the following policy (the "Policy") on the academic requirements a student must abide by in order to remain enrolled in the nursing program:

> Any student who is unsuccessful (Defined as receiving a grade of "W," "AW," "D," or "F") in a nursing course will not be allowed to continue in the nursing program. The student must submit a written request for readmission to the Admissions, Progression and Graduation Committee.

(Doc. 21, Exh. 1, at 8; Doc. 33, Exh. B, at 8). The Langston University Student Handbook ("Student Handbook") also contains the Policy, which is worded slightly differently:

> Any student who is unsuccessful in a nursing course will not be allowed to continue in the nursing program. The student must submit a written request for readmission to the Admissions, Progression and Graduation Committee . . . . Unsuccessful is defined as receiving a grade of "W," "AW," "D," or "F."

(Doc. 30, Exh. 2; Doc. 33, Exh. C, at 38). The Policy further states: "The faculty reserves the right to limit a student's unsuccessful attempts in nursing courses." (Doc. 21, Exh. 1; Doc. 30, Exh. 2; Doc. 33, Exh. B, at 8, Exh. C, at 38).

The Student Handbook contains the following guidelines related to a student's involuntary withdrawal from the nursing program: "[I]n cases where a student's performance in clinical experiences are so grossly inappropriate that the student cannot recover to demonstrate competence and earn a passing grade[,] the student may be involuntarily withdrawn from . . . the nursing program." (Doc. 21, Exh. 6, at 3). Faculty members are required to provide the student with notice "as soon as reasonably possible" after the occurrence of an incident that may lead to that student's withdrawal from the nursing program. (*Id.*). The student will usually "receive a

2

warning or be placed on probation prior to being withdrawn . . . from the nursing program." (*Id.*). The student will also "ordinarily be entitled to receive a hearing before the departmental faculty prior to being withdrawn . . . from the nursing program." (*Id.*). While the student may employ the assistance of an attorney, the role of the attorney "shall be assistive in nature only," and the attorney may not "present any evidence nor speak on behalf of the student." (*Id.* at 4).

Plaintiff received a letter grade of "D" in the Course, which is a failing grade according to the Policy. (Doc. 21, Exh. 1, at 8; Doc. 30, Exh. 2; Doc. 33, ¶ 26). Plaintiff's "D" grade signified that she was unsuccessful in the Course and, as a result, was not allowed to continue in the nursing program. (Doc. 33, ¶ 27.).

More specifically, plaintiff's failing grade in the Course was a result of her performance on two separate components of the Course: (1) the Final Care Plan, a required assignment, and (2) the clinical component of the Course. First, plaintiff received a failing grade on the Final Care Plan after the Course instructor determined that plaintiff had plagiarized an online document ("the Document") in her submission of the assignment. (Doc. 21 at 2). The instructor was alerted specifically to plaintiff's submission by the "Turnitin Nursing Program," a program that the instructor utilized to discern whether her students' work was plagiarized. After being notified that plaintiff's submission was flagged for plagiarism, the instructor compared plaintiff's submission with the Document identified by the program, and determined that plaintiff had in fact plagiarized the Document. According to defendant, plaintiff's assignment "contained material that was inconsistent and nonsensical, in that it made references to the treatment of an infant rather than the treatment of the twelve-year-old patient that plaintiff was assigned." (*Id.* at 2-3). Plaintiff was ultimately assigned a score of thirty-seven percent (37%) on the Final Care Plan. (Doc. 21 at 3).

3

Second, plaintiff failed to meet the minimum evaluation score for the clinical component of the Course. The Course syllabus makes clear that a student must obtain a passing clinical performance grade in order to pass the Course. (Doc. 21, Exh. 21). Plaintiff received a clinical evaluation score of 1.94, but was required to receive a 2.0 in order to pass.[2] (Doc. 21 at 3). Due to plaintiff's failing grades on both the Final Care Plan and the clinical component, plaintiff received a "D" in the Course and was not allowed to continue in the nursing program. (*Id.* at 4).

Plaintiff appealed her grade in the Course and, per Langston University policy, was granted a hearing before a committee comprised of faculty members, staff, and two nursing students. (Doc. 21 at 4; Doc. 33, ¶¶ 29-32). Plaintiff's attorney was present at the hearing but was not allowed to participate in the hearing, in accordance with Langston University policy. The hearing committee unanimously decided that plaintiff's grade should stand and that she was academically ineligible to continue in the nursing program. (Doc. 21 at 4l Doc. 33, ¶ 32). Soon thereafter, plaintiff filed the instant lawsuit.

Plaintiff's Motion for TRO requests that the Court "immediately grant Plaintiff admission" to Langston University's nursing program while the litigation is pending. (Doc. 17 at 1). Defendant's Motion for Summary Judgment argues that summary judgment is appropriate on all of plaintiff's claims, in part because defendant is subject to Eleventh Amendment immunity. (Doc. 33 at 11-13).

## II. Order of Issues

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cty. Rural Water Dist. No. 2 v.*

---

[2] A student's performance on the Final Care Plan is used to assess his or her performance in the clinical performance of the Course. (Doc. 21 at 3). Hence, plaintiff's apparent plagiarism on her submission of the Final Care Plan impacted her clinical component grade.

*Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) (affirming district court's dismissal of plaintiffs' claims against state agency based on Eleventh Amendment immunity). If a defendant asserts Eleventh Amendment immunity, the court must address the issue before reaching the merits of the underlying claim. *See Jones v. Courtney*, 466 F. App'x 696, 702 (10th Cir. 2012) (unpublished)[3] ("[I]f a state affirmatively raises an Eleventh Amendment immunity defense, we are required to address the defense as a 'threshold jurisdictional matter.'"); *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (stating that "addressing the threshold jurisdictional matter [is] obligatory" if "directly asserted" by a state defendant); *Martin v. Kansas*, 190 F.3d 1120 (10th Cir. 1999), *overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ("Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [plaintiff's] underlying . . . claim."). Because defendant's Motion for Summary Judgment asserts that defendant is subject to Eleventh Amendment immunity, the Court is required to address the immunity issue first.[4]

### III.   Discussion

#### A. Eleventh Amendment Immunity

Defendant argues that it is immune from plaintiff's section 1983 claims based on Eleventh Amendment immunity. Plaintiff responds that defendant has waived its immunity.

---

[3] Tenth Circuit Rule 32.1 provides: "Unpublished decisions are not precedential, but may be cited for their persuasive value."

[4] Part of the test for granting a temporary restraining order, which is relevant to plaintiff's Motion for TRO (Doc. 17), requires the Court to assess the requesting party's "likelihood of success on the merits." *Schrier v. University of Colorado,* 427 F.3d 1253, 1258 (10th Cir. 2005). Because the Court may not conduct such an inquiry if it does not have jurisdiction to do so, it must assess defendant's Eleventh Amendment immunity defense first.

(Doc. 35 at 10). Alternatively, plaintiff requests that the Court allow her to "add certain Langston University officials in their individual capacities, if it is determined that Langston University, as an entity, is to be dismissed." (*Id.* at 10).

The Eleventh Amendment bars a suit for damages against a state in federal court, absent a showing that the state has waived its immunity or where Congress has abrogated the state's immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). The arm-of-the-state doctrine extends Eleventh Amendment immunity to "entities created by state governments that operate as alter egos or instrumentalities of the states." *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996).

The Tenth Circuit has "consistently held" that state colleges and universities—as well as their governing boards of regents—are arms of the state and therefore enjoy Eleventh Amendment immunity. *See, e.g.*, *Murray v. Colorado*, 149 F. App'x 772, 773 (10th Cir. 2005) (unpublished) (Board of Regents of University of Colorado entitled to Eleventh Amendment immunity); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170-71 (10th Cir. 2000) (holding that board of state community college and occupational education system "enjoy[ed] Eleventh Amendment immunity as an instrumentality or 'arm' of the State of Colorado"); *Innes v. Kansas State University*, 184 F.3d 1275, 1278 (10th Cir. 1999), *cert. denied,* 529 U.S. 1037 (2000) ("Because Kansas State University is an 'arm of the state,' it is entitled to assert Eleventh Amendment immunity."); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998) ("[W]e have no doubt that UNMSM, its [Board of] Regents, and the Committee on Admissions are 'arms of the state,' entitled to Eleventh Amendment immunity."); *Univ. of Texas*

*at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (holding that "state colleges and universities . . . are entitled to Eleventh Amendment immunity"); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996) (University of Utah and its medical center were entitled to Eleventh Amendment immunity from lawsuit alleging violation of due process rights and deprivation of liberty and property interests); *Seibert v. State of Okla. ex rel. Univ. of Okla. Health Scis. Ctr.*, 867 F.2d 591, 594 (10th Cir. 1989), *abrogated by Fed. Lands Legal Consortium ex rel. Robart Estate v. U.S.*, 195 F.3d 1190 (10th Cir. 1999) (affirming district court ruling that university, board of regents, and university employees sued in their official capacities were immune from damages lawsuit).

Both the Tenth Circuit and the Oklahoma Supreme Court have specifically determined that the boards of regents of Oklahoma universities are state entities immune from lawsuit under the Eleventh Amendment. *Seibert*, 867 F.2d at 594 (determining that district court properly dismissed damages action against the University of Oklahoma and its Board of Regents); *Gay Activists Alliance v. Bd. of Regents of the Univ. of Okla.*, 638 P.2d 1116, 1123–24 (Okla. 1981) ("For the purpose of monetary damages, as an administrative agency, in essence an arm of the State, the Board [of Regents] enjoys the privilege of Eleventh Amendment . . . immunity."); *see also Hensel v. Office of Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994) ("[U]nder Oklahoma law, the Board of Regents of the University is an arm of the state . . . .").

The law of this circuit therefore clearly demonstrates that defendant, the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, is immune from plaintiff's lawsuit under the Eleventh Amendment.[5]  To be clear, the Eleventh Amendment bars all of

---

[5] The fact that plaintiff's Amended Complaint seeks injunctive relief in addition to compensatory damages has no bearing on defendant's Eleventh Amendment immunity because the "Eleventh Amendment applies to all suits against the state and arms of the state, regardless of the relief

plaintiff's claims. *See Murray v. Colorado*, 149 F. App'x 772, 773 (10th Cir. 2005) (upholding district court's dismissal of lawsuit against state and university board of regents alleging deprivations of equal protection, the right to travel, and property without due process of law based on Eleventh Amendment immunity); *Buchwald*, 159 F.3d at 493-94 (plaintiff's lawsuit alleging violations of her due process rights, equal protection, and the Commerce Clause was barred as to medical school board of regents under the Eleventh Amendment immunity doctrine).

Plaintiff does not seem to dispute that Eleventh Amendment immunity applies to defendant. Rather, she argues that defendant has waived its Eleventh Amendment immunity. Specifically, plaintiff contends that defendant "has been authorized to acquire insurance and for purposes of damages, Oklahoma has waived its Eleventh Amendment immunity." (Doc. 35 at 10). In support of this argument, plaintiff provides no Tenth Circuit authority and cites several Oklahoma cases, including *Schrom v. Oklahoma Industrial Development*, 536 P.2d 904 (1975), for the proposition that a governmental entity waives its immunity when it purchases liability insurance. However, as defendant points out, plaintiff has not provided any evidence to show that defendant has in fact purchased liability insurance. (Doc. 37 at 7). Defendant also states that it has *not* purchased liability insurance. (*Id.*). Even if plaintiff had demonstrated that defendant purchased liability insurance, her claim would nonetheless fail because this rule of law applies only to sovereign immunity, not immunity under the Eleventh Amendment. *Thames v. Oklahoma Historical Soc.*, 646 F. Supp. 13, 15 (W.D. Okla. 1985), *aff'd,* 809 F.2d 699 (10th Cir. 1987) (rejecting plaintiff's argument that under *Schrom*, an entity's purchase of liability

---

sought." *Murray v. Colorado*, 149 F. App'x 772, 775 n.1 (10th Cir. 2005) (unpublished); *Higganbotham v. Okla. Transp. Com'n,* 328 F.3d 638, 644 (10th Cir. 2003) ("In the instant case, the plaintiff has directly sued the state and its agencies seeking declaratory and injunctive relief, and Eleventh Amendment immunity squarely applies in these circumstances.").

insurance constituted waiver of Eleventh Amendment immunity because "Eleventh Amendment immunity cannot be equated with the limited defense of sovereign immunity . . . ").

Plaintiff also contends that defendant is not immune from this lawsuit because it was previously subject to suit in *Gossett v. Oklahoma ex rel. Board of Regents for Langston University*, 245 F.3d 1172 (10th Cir. 2001). In *Gossett*, a former nursing student brought a lawsuit pursuant to Title IX and section 1983, alleging that defendant, the Langston University president, and the Langston University dean engaged in gender discrimination by involuntarily withdrawing him from the nursing program. The Tenth Circuit reversed the district court's decision to grant defendants' motion for summary judgment because it failed to consider certain evidence. *Id.* at 1177. While the Tenth Circuit's opinion did not explicitly assess Eleventh Amendment immunity, it did state that the plaintiff's section 1983 claims could only "proceed against [the] defendants individually," and because it had determined that further proceedings were necessary, it declined to consider the issue of immunity as to plaintiff's Title IX claim. *Id.* at 1180. Contrary to plaintiff's assertion, *Gossett* does not support plaintiff's claim that Eleventh Amendment immunity is inapplicable to defendant—the Board of Regents—in this case. Plaintiff's claim is thus without merit.

Defendant has clearly established that Eleventh Amendment immunity applies to bar plaintiff's lawsuit because defendant is an arm of the state and is the only named defendant. The Court therefore has no jurisdiction over this case.[6]

### B. Leave to Amend Complaint by Adding Additional Defendants

---

[6] Plaintiff suggests that the "proper remedy," if the Court determines that defendant is entitled to Eleventh Amendment immunity, is to transfer the case to state court. (Doc. 35 at 11). As plaintiff fails to provide any authority to show that transfer to state court is proper given the circumstances of this case, the Court declines to grant this request.

In her Response to defendant's Motion for Summary Judgment, plaintiff requests leave to amend her Complaint in the event the Court determines that defendant is subject to immunity under the Eleventh Amendment. (Doc. 35 at 10). Plaintiff argues that she should be allowed to add as defendants certain Langston University employees in their individual capacities, but fails to provide the Court with any further detail. (*Id.*)  In its Reply, defendant argues that plaintiff's request is untimely and seeks to "circumvent" summary judgment. (Doc. 37 at 7). For the reasons below, the Court denies plaintiff's request to amend her Complaint.

A party seeking leave to amend its complaint after a scheduling order deadline has passed must demonstrate: "(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the [Fed. R. Civ. P.] 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

### 1. Good cause requirement under Fed. R. Civ. P. 16

The Court's Scheduling Order imposed a deadline of August 3, 2015 for plaintiff to amend her complaint or join additional parties. (Doc. 15). Plaintiff's request to add additional defendants was brought six months after the Court's deadline. Plaintiff already amended the Complaint once (Doc. 5), which she was properly allowed to do as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1).

The good cause standard requires plaintiff to "show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Good cause may be shown where a plaintiff learns new information through discovery, or if the law relevant to the plaintiff's claims has changed. *Id.* at 1240. However, good cause does not exist where the plaintiff already knew of the relevant facts and simply failed to include claims or parties in the complaint. *Id.*

10

Plaintiff has not presented the Court with any facts to show that good cause exists to allow her to amend the Complaint at this time. Importantly, there is no indication that plaintiff has learned new information that would justify amending the complaint, nor that the relevant law has changed. It is clear that plaintiff already knew of potential additional defendants at the outset of this litigation, but failed to include them in her Complaint or in her Amended Complaint.[7] Accordingly, plaintiff cannot demonstrate good cause exists.

In light of plaintiff's failure to meet the good cause requirement, the Court is not required to address the Rule 15(a) question and declines to do so. *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [the plaintiffs] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.").

### IV.  Conclusion

**IT IS THEREFORE ORDERED** that plaintiff's claims are dismissed **without prejudice**.[8] This case is terminated. A separate judgment of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Temporary Restraining Order (Doc. 17) and defendant's Motion for Summary Judgment (Doc. 35) are denied as **moot**.

**SO ORDERED** this 30th day of June, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[7] While suits against state officials in their individual capacities are permitted under *Ex Parte Young*, 209 U.S. 123, (1908), plaintiff has not sued any Board member or Langston University employee in an individual capacity. Instead, the Board of Regents is named as the sole defendant. Therefore, the *Ex parte Young* exception does not apply. The Court is aware that plaintiff's request to amend merely seeks to preserve the lawsuit by naming individuals who would be subject to suit under the *Ex parte Young* doctrine. However, plaintiff could have named these individuals as defendants much earlier in the case.

[8] *Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012) (unpublished) (stating that district court properly "relied on Eleventh Amendment immunity to dismiss the official capacity claims without prejudice, in keeping with our precedent in *Korgich v. Regents of N.M. Sch. of Mines*, 582 F.2d 549, 550 (10th Cir. 1978)").